BEVERLY A. JAMESON *v.* ARTHUR B. McCAFFRY AND LOUISVILLE AND NASHVILLE RAILROAD COMPANY.

[No. 1-1272A116. Filed September 10, 1973. Rehearing denied October 3, 1973. Transfer denied February 19, 1974.]

*James M. Redwine, Redwine and Kiely,* of Evansville, *Arthur Griffith,* of Evansville, for appellant.

*F. Wesley Bowers, James R. Thornton, Fitzgerald, Bowers, Harrison, Kent & Thornton,* of Evansville, for appellees.

LOWDERMILK, J.—The complaint in this cause was filed December 30, 1970, and answer filed thereto on January 25, 1971. On July 12, 1971, plaintiff-appellant filed request for jury trial which was not ruled on and the cause was later *assigned for trial by jury* on October 21, 1971. Defendants orally objected to plaintiff's request for jury trial, and later

filed written objections to said request, which written objections were sustained by the court on October 5, 1971.

Plaintiff-appellant filed a second request for jury trial on December 14, 1971, which was denied by the court and the cause was assigned for trial before the court on March 1, 1972.

The cause was tried to the court without a jury and the court found for the defendants and against the plaintiff and entered judgment accordingly.

Plaintiff-appellant timely filed her motion to correct errors which was by the court overruled.

Plaintiff-appellant testified that she was alone and was driving at a speed of 35 miles per hour and slowed as she approached the five crossings of the Louisville and Nashville (L&N). There are no crossing gates at the intersection and no regular watchman on duty. The flasher lights were not flashing immediately before the accident. She further testified she looked both ways before crossing the tracks, saw no engine, heard no bell, and did not see any flare or a man waving a lantern. Her vision and her hearing were good; the night was cold and clear. She was halfway through the five tracks when the left rear end of the Volkswagen bus was struck by a locomotive.

She testified she sustained personal injuries and was taken to Deaconess Hospital in a state of shock. She further testified she had had one beer about three and a half hours before the collision. There were empty beer bottles in the back of her vehicle.

Many witnesses testified concerning the crossing and the conduct of the train and its crew. The evidence is undisputed that there were red flasher lights on either side of the tracks to warn pedestrians and vehicles approaching the five tracks. The street on which Jameson was driving was at the end of railroad yards where these five sets of tracks crossed the

street. The red warning lights were operated manually and in most instances by a trainman who would leave the engine as it approached the crossing and push the switch to operate the lights and, when the hazard had passed, would push another switch to turn them off.

The evidence most favorable to appellees was that Billy Keith Spray was a brakeman for the L&N on the engine involved in the collision and that the engine was stopped back in the yards some feet from the highway. He went out on the highway and signaled the engineer, McCaffry, to move ahead. He saw the Volkswagen bus coming and waved his lighted electric lantern toward it to indicate the hazard. Plaintiff-appellant approached that part of the street in which he was standing and later swerved to her left to avoid striking him and then cut back to the right and headed straight for the engine, which he claimed was stopped and setting on the crossing. He further testified that Jameson slammed on her brakes and went across the tracks and the rear end of the bus slid into the engine. Spray further testified that the locomotive headlights were burning, the bell was ringing and the flashers were flashing. However, other witnesses deny that the bell was ringing or the flashers were flashing and apparently did not see Spray flagging with his lantern. Police officers arrived, made an investigation, and sent Jameson to the hospital.

Police officers testified they smelled alcohol on Jameson's breath and the receiving nurse at the hospital could not remember; however, that portion of the hospital record which she prepared disclosed that she smelled alcohol on Jameson's breath.

The first assignment of error relied upon by plaintiff-appellant for a new trial is the irregularity in the proceedings by the court denying plaintiff a jury trial.

The plaintiff-appellant admits that she impliedly waived her constitutional right to a trial by jury by failing to make a

request for it within a ten day time limit. She contends when the court, pursuant to plaintiff's request, set the cause for jury trial it nullified the waiver and that when the trial judge subsequently denied the plaintiff a jury trial he abused his discretion and committed reversible error.

Plaintiff-appellant attempts to sustain her position with the case of *McDonald* v. *Miller* (1968), 143 Ind. App. 606, 242 N.E.2d 39. In *McDonald* the former Supreme Court Rule 1-8A controlled, but has now been superceded by Rule TR. 38(B). It appears to us from the *McDonald* case that at that time it was discretionary with the court to grant a motion for trial by jury, even though the ten day limitation had passed, but the discretion granted by that section did not extend to the withdrawal of the right to a jury once granted because of the limitation of Rule 1-8A. *Said Rule 1-8A does not take away the right to a jury trial. Said rule only provides the method of waiving such right. Spangler* v. *United States Rubber Co.* (1962), 133 Ind. App. 468, 470, 471, 183 N.E.2d 212. That case further discusses Ind. Ann. Stat. Burns § 2-1204, Cases triable by court and by jury. *Spangler* v. *Armstrong Rubber Co.* (1962), 133 Ind. App. 411, 413, 178 N.E.2d 764.

It must be remembered that said cited section of the statute has been repealed and the Rules of the Supreme Court adopted and effective January 1, 1970, are now controlling in the case at bar.

We are of the opinion that Jameson was not denied a jury trial but that *she waived her right to a jury by not making a timely demand in accordance with Rule TR. 38(B).* Plaintiff-appellant cannot now successfully maintain that the court erred in its ruling merely because there was no delay occasioned by the filing of the motion for a jury trial. She did not comply with the rule and cannot now be heard to complain.

We are of the opinion, therefore, that the court did not commit error in denying a jury trial at the time he did. Harvey's Indiana Practice, Vol. 3, p. 146, Rule 38(b) ; *Aetna Casualty and Surety* v. *Acme-Goodrich* (1959), 130 Ind. App. 432, 438, 159 N.E.2d 310.

Specification 2 of the motion to correct errors is waived by plaintiff-appellant for the reason that it is not argued or discussed in the argument section of the brief, as required by Rule AP. 8.3(A) (7).

Plaintiff-appellant states that issues 3 through 7 which make up assigned errors raise substantially the same questions and proceeds to group them and support them under the same argument, pursuant to Rule AP. 8.3(A) (7). We shall treat them accordingly.

Specification 3 is a clever way to camouflage the charged error that the court's decision is based on insufficient evidence. We necessarily hold that the specification of error amounts to an attempt to appeal from a negative judgment, assigning as error insufficient evidence. Such is not permissible.

Specification 4 is that the decision of the court is contrary to the evidence in that the court failed to grant plaintiff a judgment on the theory of last clear chance. This, too, is an appeal from a negative judgment and therefore said specification of error presents nothing to this court. *Englebrecht* v. *Property Developers, Inc.* (1973), 156 Ind. App. 354, 296 N.E.2d 798; *VerHulst* v. *Hoffman* (1972) 153 Ind. App. 64, 286 N.E.2d 214, 216.

Specification 5 is that the decision of the court is contrary to law in that the evidence allows no interpretation other than recovery by plaintiff on the theory of last clear chance.

The trial judge saw, heard and observed the witnesses; he was in a position to determine the facts, which he did, and

it was a question of fact and not of law to be determined who was at fault and which of the parties had the last clear chance. This court, as heretofore stated so many times, will not weigh the evidence but will consider only the evidence most favorable to the appellee to determine if there is substantial evidence of probative value, of reasonable inferences therefrom to sustain the decision of the trial court. Having so considered the evidence we are of the opinion there was ample evidence to sustain the trial court's decision. *Chicago, Indianapolis & Louisville R. Co.* v. *Carter* (1971), 149 Ind. App. 649, 274 N.E.2d 537; *Pontious* v. *Littleton* (1970), 146 Ind. App. 369, 255 N.E.2d 684, 20 Ind. Dec. 422.

The case of *Pokraka* v. *Lummus Co.* (1951), 230 Ind. 523, 532, 104 N.E.2d 669, holds:

"It is only where the evidence is without conflict and can lead but to one conclusion, and the trial court has reached an opposite conclusion, that the decision of the trial court will be set aside on the grounds that it is contrary to law."

In the case at bar the evidence was most conflicting and it would be a physical impossibility for reasonable men to reach only one conclusion under the evidence. Therefore the decision is not contrary to law and there is no error as claimed, as the evidence does permit an interpretation other than the recovery by the plaintiff on the theory of last clear chance.

Plaintiff-appellant's next contention is that the court committed reversible error in sustaining defendant's objections to questions propounded to witnesses Raymond E. Jameson, Carrol Wagner, and Harold Nelligan concerning prior malfunctioning of safety devices at the intersection. Plaintiff-appellant saved her question by making an offer to prove after an adverse ruling on each objection. In support of her contention she cites *Lake Erie & W. R. R.* v. *Howarth* (1919), 73 Ind. App. 454, 124 N.E. 687, and *Chesapeake and Ohio*

*R. R.* v. *Perry* (1913), 71 Ind. App. 506, 125 N.E. 414, and further cites the general rule as to functional failures of railroad crossing devices from 46 A. L. R. 2d 935, 936, which, in effect, states it was proper to make such showing.

> The courts will not reverse on the failure to permit a witness to testify with respect to similar transactions in the past unless there is an abuse of discretion.

In *Farm Bureau Mut. Ins. Co. of Ind.* v. *Seal* (1962), 134 Ind. App. 269, 179 N.E.2d 760, it is stated:

> "Appellant claims error for failure of the court to allow certain testimony of other witnesses to be admitted into evidence with respect to similar transactions as transpired between Dorothy and appellant's agents. The admission of evidence of similar acts or transactions as proof that a particular act was done lies generally with the discretion of the trial court. *Hufford, Administrator* v. *Neher* (1896), 15 Ind. App. 396, 44 N.E. 61; *Evansville & Terre Haute Railroad Company* v. *Keith* (1893), 8 Ind. App. 57, 35 N.E. 296; *Hitchens* v. *Ricketts* (1862), 17 Ind. 625. Unless there has been an abuse of that discretion this court will not reverse on that point alone. See *Miller et al.* v. *Dill et al.* (1898), 149 Ind. 326, 335, 49 N.E. 272."

Plaintiff-appellant contends that under this authority she may introduce prior failures of a warning signal into evidence. The prior failures here referred to in the cited cases are failures of automatic devices, while in the case at bar the flashing signals were not automatic but were controlled solely by manpower. Manually operated warning signals are distinguishable and not included in said annotation with automatic or self operated railroad crossing warning signals, devices and apparatus.

> "The term 'functional failure,' as used in the annotation, applies only to mechanical failures of automatic or self-operated railroad crossing warning signals, devices and apparatus; and inasmuch as manually operated warning signals are distinguishable, cases involving the latter type of signals are not included." 46 A. L. R. 2d 935. See, also, p. 936, Summary, §§ 2 and 3.

In *Murphy* v. *Indiana Harbor Belt Railroad* (1972), 154 Ind. App. 138, 289 N.E.2d 167, it was held that the trial court did not commit reversible error in excluding evidence of train movements before and after the collision in question and said:

"Even in light of the stipulation such ruling is not error. When a trial court permits such evidence of other occurrences over proper objection it may tread on soft ground. That is certainly the wisdom embodied in a number of cases in Indiana, including *Farm Bureau Mut. Ins. Co. of Ind.* v. *Seal,* 134 Ind. App. 269, 179 N.E.2d 760 (1962) and *Evansville & T. H. R. Co.* v. *Keith,* 8 Ind. App. 57, 35 N.E. 296 (1893).

\* \* \*

The admission of similar acts, occurrences or transactions as proof that a particular act was done or that a certain occurrence happened generally rests in the discretion of the trial court. *Evansville & T. H. R. Co.* v. *Keith, supra* and *Farm Bureau Mut. Ins. Co.* v. *Seal, supra.*" See, also, *Feigel Construction Corp.* v. *City of Evansville* (1958), 128 Ind. App. 698, 150 N.E.2d 263.

We are of the opinion that the court correctly excluded this evidence.

However, had the exclusion of such evidence been error it would not have changed the outcome of the litigation and the judgment would be correct and the error harmless. Rule TR. 61, in pertinent part, reads as follows:

"Harmless Error. No error in either the admission or the exclusion of evidence . . . is grounds for granting relief under a motion to correct errors . . . unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceedings must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

Appellant's final specification of error, designated in her brief as VIII A comes under the motion to correct errors, specification 6, sub-section 0. The claimed error is that the

court erred in overruling plaintiff-appellant's objections to questions propounded to witness Robert Greenfield, wherein the witness was asked if the plaintiff-appellant was charged with a traffic violation on the evening of the wreck. Objection was made to the question and was overruled by the court for the reason that plaintiff-appellant had, on her cross-examination of the witness, asked Officer Greenfield questions to elicit answers that no arrests had been made for drunken driving or for public intoxication. The trial judge, in overruling plaintiff-appellant's objection, stated "I believe you opened the door. Go ahead."

Plaintiff-appellant contends the door was not opened by her questioning concerning arrests on cross examination because the questioning was limited to arrests for alcoholic matters and a cross examination was necessary because there had been previous testimony from Officer Greenfield concerning the odor of alcohol coming from the plaintiff-appellant.

We now hold that when plaintiff-appellant interrogated on cross examination about an arrest for any cause the field was opened up and the gate having been opened it was proper for the defendants-appellees to drive right through and make their interrogation concerning any arrests which might have been made, irrespective of what the charge may have been.

Plaintiff-appellant relies on the case of *Ashton* v. *Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210. *Ashton, supra,* is different from the case at bar in that the question was asked concerning prior convictions for the purpose of impeaching the witness's credibility and was determined by our Supreme Court as a ". . . 'fishing expedition' which if answered would not necessarily reveal any admissible evidence. . . ." *Ashton* is further distinguishable from the case at bar in that in *Ashton* no questions had been asked the witness which opened up the examination so that cross examination could be gone into.

In the case of *Jackson* v. *Beard* (1970), 146 Ind. App. 382, 255 N.E.2d 837, the case of *Brindle* v. *Harter* (1965), 138 Ind. App. 692, 211 N.E.2d 513, which, like the case at bar, is the result of injuries sustained in an automobile collision, is cited and quoted as follows:

" 'A large number of cases have held that even error in the admission or exclusion of testimony on cross-examination will not be grounds for reversal, *barring prejudice to the complaining party.* [Citing cases.] And finally, in *Walker* v. *State* (1924), 194 Ind. 402, 405, 142 N.E. 16, 17, it was held:

" ' "With reference to the cross-examination of which complaint is made, it is clear from anything here shown that it had reference to matters entirely irrelevant and therefore improper from any point of view. But is the error one justifying us in reversing the judgment? Appellant was found guilty on each of the four counts * * *

" ' "*In view of the entire evidence and the judgment as finally rendered* in this case, we are well convinced that a retrial would not result more favorably to appellant. . . . and it affirmatively appearing from the record to our entire satisfaction that the erroneous cross-examination of appellant exerted no special influence over the verdict of the jury, or was otherwise prejudicial to the rights of appellant, but that in reality a fair and impartial trial was had and a just conclusion reached, a reversal of the judgment under these circumstances ought not to follow. * * *" (Emphasis added)' "

In the case at bar we do not intend that it be inferred from the above quote that the evidence admitted on re-direct examination was erroneous.

We are of the opinion that the court properly overruled the objection and was not otherwise prejudicial to the rights of plaintiff-appellant.

Further, on re-cross examination plaintiff-appellant explored the arrest for disregarding the flasher lights and fully brought out all circumstances concerning the arrest which were favorable to her. No prejudice resulted to plaintiff-appellant as it is our opinion that the

trial judge would not be influenced by the mere fact that she was charged with the offense of failure to obey warning lights in view of the fact the trial judge heard all the conflicting evidence as to whether or not the warning lights were or were not flashing before the collision.

Judgment affirmed.

Hoffman, C.J. (by designation), concurs; Lybrook, J., concurs; Robertson, P.J. not participating.

NOTE.—Reported at 300 N.E.2d 889.